IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CALIFORNIA SOUTH CO., a Tennessee corporation; and MEGAN A. EPSTEIN, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>GINH WOOD, an individual,<br><br>Defendant. | Civil Action No. ___________<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs California South Co. ("CA South") and Megan A. Epstein (collectively, "Plaintiffs"), by and through their undersigned counsel, bring this action against Defendant Ginh Wood and allege as follows:

## NATURE OF THE ACTION

This is a civil action under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, the Stored Communications Act, 18 U.S.C. §§ 2701, 2707, the Tennessee Personal and Commercial Computer Act, Tenn. Code Ann. § 39-14-601 et seq., and Tennessee common law, arising from Wood's intentional and unauthorized access to CA South's protected computer systems after CA South terminated Wood's employment for poor work performance.

When CA South terminated Wood, it asked her to return its devices. Wood did not return them promptly; their return was negotiated through counsel over a period of weeks. Throughout that period—and apparently for

months afterward—Wood remained logged into CA South's internal Slack workspace, which she continued to surveil after her termination in order to read employees' internal messages. She also continued to receive and open the email of CA South's principal, Ms. Epstein, on her personal device, reading internal communications she knew she had no right to see. By her own admission, Wood went looking for messages about her, screenshotting those that "negatively talked about [her]" and capturing confidential correspondence concerning potential litigation—all while CA South and Ms. Epstein remained unaware that anyone was reading their private communications.

Wood then deployed what she had taken in a lawsuit of her own. Rather than accept a termination grounded in her own poor work performance, Wood sued CA South and Ms. Epstein in the Chancery Court for Davidson County, Tennessee. Wood's own sworn deposition testimony concedes the core of these claims: she had no authorization to access CA South's systems after her termination, and she accessed them anyway. Wood's conduct constitutes unlawful computer access under federal and Tennessee law, and an intrusion upon Ms. Epstein's seclusion. Plaintiffs bring this action to recover their losses, and to compel the return of every communication Wood unlawfully obtained.

**PARTIES**

1. Plaintiff California South Co. is a Tennessee corporation with its principal place of business in Nashville, Tennessee. In the conduct of its business, CA South uses computer systems, including a Microsoft Outlook

email platform and a Slack messaging platform, that are used in or affecting interstate or foreign commerce or communication. Those systems are "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2).

2. Plaintiff Megan A. Epstein is an individual residing in Tennessee and a principal of CA South. Her email account and private correspondence were among those Wood accessed without authorization, as alleged below.

3. Defendant Ginh Wood is an individual who, upon information and belief, resides in Tennessee. CA South employed Wood until it terminated her for poor work performance on July 31, 2023. After that date, Wood accessed CA South's protected computers without authorization, as alleged below.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law—specifically, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Stored Communications Act, 18 U.S.C. §§ 2701, 2707. This Court also has jurisdiction pursuant to 18 U.S.C. § 1030(g), which expressly authorizes civil actions by persons who suffer damage or loss by reason of a CFAA violation, and pursuant to 18 U.S.C. § 2707(a), which authorizes civil actions by persons aggrieved by violations of the Stored Communications Act.

5. This Court has supplemental jurisdiction over Plaintiffs' state-law claims—CA South's claim under the Tennessee Personal and Commercial Computer Act and Ms. Epstein's claim for intrusion upon seclusion—pursuant

to 28 U.S.C. § 1367(a) because they form part of the same case or controversy as the federal claims—Wood's unauthorized access to the CA South Systems.

6. Venue is proper in the Middle District of Tennessee, Nashville Division, pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district, including the operation of CA South's computer systems and Wood's access to those systems, and because the parties reside and operate in this district.

7. This action is timely. A civil action under the CFAA must be brought "within 2 years of the date of the act complained of or the date of the discovery of the damage." 18 U.S.C. § 1030(g). CA South did not discover the damage caused by Wood's unauthorized access to CA South Systems until January 20, 2026, when Wood produced post-termination CA South communications in the underlying state court litigation. CA South could not reasonably have discovered the damage earlier because Wood never informed CA South that she had preserved its internal communications, and because the access was inherently self-concealing: it occurred through the use of credentials and application sessions provisioned to Wood during her employment, on Wood's personal device and away from CA South's premises, and it generated no outward indication of compromise. She sent no messages, posted no content, and took no action through the CA South Systems that revealed her continued presence, and the screenshots she took resided on her own device. This action is brought within two years of the discovery of damage.

8. In the alternative, the running of the limitations period was tolled by the self-concealing nature of Wood's access: Wood knew she was not authorized to receive or review CA South communications, yet she accessed them covertly for months; her access left no outward indication of compromise on CA South's system; she did not disclose the nature of the breach until her January 2026 document production in the related state court action, even as she litigated against Plaintiffs using the materials she obtained; and Plaintiffs exercised diligence, raising the issue promptly with Wood upon discovery. Plaintiffs' claim under the Stored Communications Act is likewise timely because it is brought within two years after Plaintiffs "first discovered or had a reasonable opportunity to discover the violation[s]." 18 U.S.C. § 2707(f).

## FACTUAL ALLEGATIONS

9. CA South uses a computer network that includes, among other systems, a Microsoft Outlook email platform and a Slack workplace messaging platform (collectively, the "CA South Systems"). These systems are used to conduct CA South's business operations, which involve interstate commerce and interstate communications. The CA South Systems therefore constitute "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2). The CA South Systems are also facilities through which an electronic communication service is provided within the meaning of 18 U.S.C. § 2701(a), and are "computer[s]," "computer system[s]," and "computer network[s]" within the meaning of Tenn. Code Ann. § 39-14-601. Communications transmitted

through the CA South Systems are held in electronic storage on those systems, including in temporary, intermediate storage incidental to their transmission and in storage for purposes of backup protection.

10. Access to the CA South Systems is restricted to authorized users—employees and others who have been granted access for business purposes. CA South's authorization framework does not permit former employees to access the CA South Systems after their employment ends.

11. Wood was employed by CA South until July 31, 2023. In connection with her employment at the company, Wood was granted access to the CA South Systems, including the Outlook email platform and the Slack messaging platform, for legitimate business purposes.

12. CA South terminated Wood's employment effective July 31, 2023, based on her repeated poor work performance. Upon termination, any and all authorization Wood possessed to access the CA South Systems ceased. *See Abu v. Dickson*, 107 F.4th 508, 516 (6th Cir. 2024); *see also United States v. Shahulhameed*, 629 F. App'x 685, 688 (6th Cir. 2015); *Am. Furukawa, Inc. v. Hossain*, 103 F. Supp. 3d 864, 876 (E.D. Mich. 2015).

13. Although her termination resulted from her own poor work performance, Wood went on to commence a lawsuit against CA South and Ms. Epstein in the Chancery Court for Davidson County, Tennessee, styled *Ginh Wood v. California South Co., et al.*, Case No. 24-0722-II (the "State Court Action"). As alleged below, Wood sought to advance the State Court Action

using internal CA South communications she unlawfully obtained from the CA South Systems after her termination.

14. Following Wood's termination, Ms. Epstein's CA South emails continued to be delivered to Wood's personal device via the Microsoft Outlook mobile application. Wood intentionally and repeatedly reviewed internal CA South email communications to which she had no right of access. Each time Wood opened the Microsoft Outlook application on her personal device, the application connected to CA South's Microsoft Exchange/Microsoft 365 environment, authenticated using the credentials provisioned to Wood during her employment, and queried and downloaded CA South mail from CA South's servers. CA South communications did not reach Wood's device of their own accord. They reached it only because the application, using Wood's CA South credentials, connected to and pulled data from CA South's protected computers. Wood's conduct was active, not passive: she opened the application, caused it to retrieve CA South communications from CA South's servers, opened the messages, and screenshotted those she selected.

15. Wood's access was without authorization. Wood has acknowledged that she did not have permission to access CA South's computer systems after her termination. When asked directly whether she had authorization to receive and review CA South communications following her termination, Wood conceded that she did not. At a February 10, 2026 deposition, asked whether she was authorized to continue receiving CA South

email after her termination, she testified: "I mean, no. But yeah, they'd still come through." Wood separately admitted her post-termination access to CA South's Slack workspace, as alleged below. CA South's failure to revoke Wood's access credentials did not extend her authorization.

16. During this period, Wood took screenshots of internal CA South communications. By her own account, she deliberately targeted and preserved communications that "negatively talked about [her]"—demonstrating that her unauthorized access was both intentional and purposeful. Asked at her February 10, 2026 deposition what she did with messages that came in about her, Wood answered: "Screenshot." She testified that she captured each message "just [as] it came in my inbox"—contemporaneously with its arrival.

17. Wood knew at the time that she should not have been receiving CA South communications. Yet she continued to open, read, screenshot, and preserve CA South communications, and then provide them to her attorney.

18. In addition to accessing CA South's email systems, Wood also accessed CA South's Slack messaging platform following her July 31, 2023 termination. Slack is an internal messaging platform used by CA South employees to conduct business communications. As with the email platform, Wood had no authorization to access CA South's Slack workspace after the termination of her employment. Wood's access to CA South's Slack workspace did not depend on any communication being delivered to her. Wood's Slack application remained logged into the CA South workspace after her

termination, and Wood affirmatively opened that application, causing it to connect to and retrieve internal CA South messages from the workspace.

19. Wood has admitted this access under oath. At her February 10, 2026 deposition, Wood testified that the CA South workspace "was still logged in, and it was still pushing messages," and that she "opened it one day" and reviewed the internal CA South messages it contained. Each time Wood opened the Slack application, she obtained internal CA South communications.

20. Among the communications Wood accessed without authorization were confidential communications of CA South and Ms. Epstein concerning Wood's retention of counsel and Plaintiffs' response to it—communications made in anticipation of litigation with Wood. Wood testified that from those communications she learned that Ms. Epstein had spoken with another CA South employee and said that she "was right about" Wood "obtaining counsel."

21. Ms. Epstein maintained a reasonable expectation of privacy in her email account and correspondence. Her account was password-protected and accessible only through credentials personal to her; she used it for personal as well as professional correspondence; and no CA South policy or practice provided for the monitoring of her correspondence or gave any other person a right of access to it. Her correspondence included communications about her own personal and professional affairs, confidential personnel matters concerning other CA South employees, and CA South's response to anticipated

litigation. Wood's covert monitoring, review, and preservation of those communications invaded Ms. Epstein's privacy without authorization.

22. Wood acknowledged at her February 10, 2026 deposition that she had accessed and reviewed such communications. This access was entirely without authorization and outside any legitimate purpose. Wood's review of these confidential communications compounded the harm caused by her unauthorized access to the CA South Systems.

23. Wood shared the screenshots she obtained—including the confidential communications described above—with her attorney in the State Court Action. Wood testified that she "shared them with [her] counsel." The full scope of the materials Wood took, retained, and disseminated is not presently known to Plaintiffs. But the continued use of materials obtained through unauthorized computer access in civil litigation prejudices CA South.

24. CA South did not become aware of Wood's unauthorized access to the CA South Systems until January 20, 2026, when Wood made a document production in the underlying state court litigation. Nothing in the ordinary operation of the CA South Systems revealed that Wood's sessions remained active or that her device was retrieving CA South communications. That production included communications from Ms. Epstein's inbox that post-dated Wood's termination—internal CA South communications that Wood had no lawful right to possess. Promptly upon that discovery, CA South commenced

an investigation to identify evidence of the breach, assess the damage to the CA South Systems, and determine what remedial measures were required.

25. Upon discovering that Wood's production contained post-termination emails from CA South's systems, counsel for CA South sent a written demand letter to Wood's counsel on February 2, 2026, advising of the CFAA violations, requesting preservation of all related documents, and demanding an explanation of how Wood obtained the communications. Wood did not deny the access. Wood's subsequent deposition on February 10, 2026, confirmed the scope of her unauthorized access, including her admissions regarding the email platform, the Slack platform, and the screenshots she took.

26. As a direct and proximate result of Wood's unauthorized access, CA South has incurred losses within the meaning of 18 U.S.C. § 1030(e)(11), including the following, each incurred within a one-year period: (a) costs of investigating the breach, which independently exceed $5,000, consisting of CA South employee and management time devoted to identifying which accounts and systems Wood accessed, determining what communications she obtained and disseminated, and assessing the scope of the intrusion into the CA South Systems; (b) $12,000 paid to date to a managed IT support and IT services company that CA South retained in January 2026 to address the issues raised by the breach. Both categories represent a cost of responding to the offense, conducting a damage assessment, or restoring the affected systems, and therefore constitute "loss" under 18 U.S.C. § 1030(e)(11) without regard to any

interruption of service. *See Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065 (6th Cir. 2014). These losses exceed the $5,000 threshold of 18 U.S.C. § 1030(c)(4)(A)(i)(I), and the costs of investigating the breach described in subpart (a) independently exceed that threshold.

27. Wood's unauthorized access also caused "damage" to the CA South Systems within the meaning of 18 U.S.C. § 1030(e)(8) by impairing the integrity of the CA South Systems and of the data and information they contain. Throughout the period of Wood's access, the CA South Systems could not perform their essential security function of restricting access to authorized users: Wood's still-active sessions and authentication tokens operated as unauthorized entry points that defeated the access controls the CA South Systems were designed and configured to enforce, and the confidentiality and integrity of the communications stored on those systems—including confidential communications concerning anticipated litigation—were impaired from the moment Wood began reading, copying, and disseminating them. Wood removed internal communications from the secured environment of the CA South Systems to her personal device and then to third parties, placing them beyond the protection of CA South's security controls. Restoring the CA South Systems to their condition prior to the offense required terminating Wood's active sessions and authentication tokens, resetting credentials, and auditing and remediating access controls on the CA South Systems. That

damage existed from the time of Wood's unauthorized access but was not discovered until Wood's January 20, 2026 document production.

28. In addition to CA South's economic losses, Ms. Epstein has suffered non-economic harm as a direct result of Wood's unauthorized review of her private correspondence, including the loss of privacy in her personal and professional communications, embarrassment, and emotional distress.

**COUNT I**
***Violation of the Computer Fraud and Abuse Act***
**18 U.S.C. §§ 1030(a)(2)(C), 1030(g)**

29. CA South incorporates by reference each and every allegation in the preceding paragraphs as though fully stated herein.

30. The CA South Systems, including the Microsoft Outlook email platform and the Slack messaging platform, are "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2) because they are "used in or affecting interstate or foreign commerce or communication[.]" CA South is a Tennessee company, and its computer systems transmit communications and data across state lines in the ordinary course of business.

31. Wood intentionally accessed the CA South Systems on multiple occasions following the termination of her employment on July 31, 2023: she affirmatively accessed and reviewed CA South's Slack workspace, and she caused her device to authenticate to and retrieve CA South email communications from CA South's Microsoft Exchange/Microsoft 365 servers, opening and screenshotting the messages she selected.

32. Wood's access was "without authorization" within the meaning of 18 U.S.C. § 1030(a)(2). Wood's employment—and with it, any authorization she had to access the CA South Systems—was terminated on July 31, 2023. Because Wood's authorization to access the CA South Systems derived entirely from her employment, it ended when that employment ended. *Abu,* 107 F.4th 508; *see also Shahulhameed*, 629 F. App'x at 688. Wood's own sworn deposition testimony confirms she had no permission to access the CA South Systems following her termination. Under the "gates-up-or-down inquiry" that governs § 1030(a)(2), the gate was down as to Wood after July 31, 2023, placing her conduct within the "without authorization" prong of § 1030(a)(2). *See Van Buren v. United States*, 593 U.S. 374, 390-91 (2021).

33. Through her unauthorized access, Wood obtained information from the CA South Systems, including internal email communications from Ms. Epstein's inbox and internal Slack messages. Wood intentionally retained this information by taking screenshots and ultimately produced the improperly obtained materials in the underlying state court litigation.

34. As a direct and proximate result of Wood's unauthorized access, CA South has suffered "loss" within the meaning of 18 U.S.C. § 1030(e)(11) aggregating at least $5,000 in value during a one-year period, satisfying the threshold set forth in 18 U.S.C. § 1030(c)(4)(A)(i)(I). These losses include, without limitation, the $12,000 paid to date to the managed IT support and IT services company CA South retained to address the issues raised by the breach,

and the costs of investigating the breach referenced in Paragraph 26 above, which independently exceed $5,000. *See Yoder,* 774 F.3d at 1074. In addition, Wood's unauthorized access caused "damage" to the CA South Systems within the meaning of 18 U.S.C. § 1030(e)(8), impairing the integrity of the CA South Systems and of the data and information they contain—including by defeating the systems' access-restriction function—as alleged in Paragraph 27 above.

35. Accordingly, Wood is liable to CA South for civil damages and equitable relief under 18 U.S.C. § 1030(g).

**COUNT II**
***Violation of the Stored Communications Act***
**18 U.S.C. §§ 2701, 2707**

36. CA South incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully stated herein.

37. CA South's Microsoft Outlook/Exchange email environment and its Slack workspace are facilities through which an electronic communication service is provided within the meaning of 18 U.S.C. § 2701(a). The facilities Wood accessed were CA South's Microsoft Exchange/Microsoft 365 environment and its Slack workspace servers where CA South's electronic communications are transmitted and stored. Each access occurred when an application on Wood's device, authenticating with CA South credentials, connected to and retrieved communications from CA South's servers.

38. Following her termination, Wood intentionally accessed those facilities without authorization and thereby obtained electronic

communications of CA South and its personnel while they were in electronic storage within the meaning of 18 U.S.C. §§ 2510(17) and 2701(a).

39. The communications Wood obtained were in temporary, intermediate storage incidental to their electronic transmission when she obtained them. 18 U.S.C. § 2510(17)(A). Wood obtained internal Slack messages that CA South's Slack facility transmitted to her still-authenticated session as those messages were sent—that is, while the transmission was still underway. Wood testified that she captured messages "just [as they] came in my inbox," contemporaneously with their transmission and before their intended recipients had retrieved them. The same is true of the email communications Wood captured as they arrived: her device retrieved those incoming CA South messages from CA South's Microsoft Exchange/Microsoft 365 servers contemporaneously with their transmission, and Wood opened and screenshotted them before their intended recipients had retrieved them. In the alternative, and as to any communication that an intended recipient had already retrieved before Wood obtained it, that communication was stored by the CA South Systems for purposes of backup protection of the communication. 18 U.S.C. § 2510(17)(B).

40. Wood's violations were knowing, willful, and intentional, as confirmed by her deposition testimony that she had no authorization to access CA South's systems after her termination and by her deliberate targeting, review, and preservation of particular communications.

41. Each discrete unauthorized access constitutes a separate violation of 18 U.S.C. § 2701. Under 18 U.S.C. § 2707, CA South is entitled to recover the actual damages it sustained as a result of Wood's violations—including the costs of investigating and remediating the intrusion—and in no event less than the $1,000 minimum award provided by 18 U.S.C. § 2707(c), together with punitive damages for Wood's willful and intentional conduct, reasonable attorneys' fees and costs, and appropriate equitable relief.

**COUNT III**
***Violation of the Tennessee Personal and Commercial Computer Act***
**Tenn. Code Ann. § 39-14-601 et seq.**

42. CA South incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully stated herein.

43. The CA South Systems are "computer[s]," "computer system[s]," and "computer network[s]" under Tenn. Code Ann. § 39-14-601.

44. Wood intentionally and without authorization accessed the CA South Systems following the termination of her employment, in violation of Tenn. Code Ann. § 39-14-602(b)(1)(A). Wood further intentionally and without authorization made unauthorized copies, in electronic form, of computer data residing in and communicated by CA South's computers and computer network, including by taking screenshots of internal CA South email and Slack communications, in violation of Tenn. Code Ann. § 39-14-602(a)(1)(B)(ii).

45. CA South is a person whose property was injured by reason of Wood's violations of the Tennessee Personal and Commercial Computer Act.

CA South's injuries include the costs of investigating and remediating the intrusion alleged in Paragraphs 26 and 27 above—including the $12,000 paid to its managed IT services provider and the CA South employee time devoted to assessing the scope of the intrusion—and the compromise of the security of the CA South Systems and of the confidentiality of the data they contain.

46. Pursuant to Tenn. Code Ann. § 39-14-604, CA South is entitled to recover the damages it has sustained, including its losses as alleged herein, and the costs of this civil action.

**COUNT IV**
***Intrusion Upon Seclusion***
**(By Plaintiff Megan A. Epstein)**

47. Ms. Epstein incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully stated herein.

48. Wood intentionally intruded upon the solitude, seclusion, and private affairs and concerns of Ms. Epstein by deliberately monitoring Ms. Epstein's email account and reading, screenshotting, and preserving her private correspondence—including communications of a highly confidential and sensitive nature concerning Wood's retention of counsel and CA South's and Ms. Epstein's response to it—without authorization or consent.

49. Ms. Epstein never consented to Wood's post-termination surveillance—including the monitoring, review, and preservation of her correspondence. Wood concealed the intrusion: she did not tell Ms. Epstein that

she was continuing to read and preserve their communications, and Plaintiffs learned of it only when Wood produced the materials in January 2026.

50. The correspondence Wood reviewed during the period of surveillance included Ms. Epstein's private communications concerning her own personal and professional affairs, confidential personnel matters concerning other CA South employees, and confidential communications concerning anticipated litigation with Wood. Ms. Epstein controlled that account as CA South's principal; the account was password-protected and used by Ms. Epstein for personal as well as professional correspondence; and no CA South policy or practice provided for monitoring of the account or gave anyone—much less a terminated employee—any right to read her mail.

51. Wood's intrusion would be highly offensive to a reasonable person. Wood monitored the private communications of the principal who had terminated her employment, deliberately targeted certain communications, and preserved them for use against Ms. Epstein in litigation.

52. As a direct and proximate result of Wood's intrusion, Ms. Epstein has suffered damages, including the loss of privacy in her personal and professional communications, embarrassment, and emotional distress. Wood's conduct was intentional, willful, and malicious, entitling Ms. Epstein to compensatory and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs California South Co. and Megan A. Epstein respectfully request that this Court enter judgment in their favor and against Defendant Ginh Wood, and award the following relief:

A. Compensatory damages for all economic losses suffered by CA South as a result of Wood's violations of the CFAA, the Stored Communications Act, and the Tennessee Personal and Commercial Computer Act, including but not limited to costs of investigating and responding to the unauthorized access, and all other losses cognizable under 18 U.S.C. § 1030(e)(11);

B. Statutory damages in no event less than the $1,000 minimum provided by 18 U.S.C. § 2707(c), and punitive damages under 18 U.S.C. § 2707;

C. Compensatory damages in favor of Ms. Epstein for Wood's intrusion upon her seclusion, including damages for the loss of privacy in her communications, embarrassment, and emotional distress, and punitive damages for Wood's intentional, willful, and malicious conduct;

D. Preliminary and permanent injunctive relief requiring Wood to: (i) return to CA South all screenshots, documents, files, and other materials obtained through her unauthorized access to the CA South Systems; (ii) delete and destroy all copies of such materials in her possession, custody, or control, including any copies provided to or retained by her counsel; and (iii) refrain from any further unauthorized access to the CA South Systems;

E. An order requiring Wood and her counsel to identify all persons to whom any materials or information obtained through unauthorized access to the CA South Systems have been disclosed, and to account for all use made of such materials in the underlying state court litigation;

F. Attorneys' fees and costs of this action to the extent permitted by law, including pursuant to 18 U.S.C. § 2707;

G. Pre- and post-judgment interest at the maximum lawful rate; and

H. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Sloan E. Nickel*

Sloan E. Nickel (TN BPR 42956)
LITSON PLLC
54 Music Sq. E., Ste. 300
Nashville, TN 37203
615-985-8205
sloan@litson.co

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2026, a true and correct copy of the foregoing was filed through the Court's CM/ECF system.

*/s/ Sloan E. Nickel*